**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S. D.C. Rome

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JUN 1 3 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| NANCY A. ADAMS | ) |
| | ) |
| Plaintiff; | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM LIFE INSURANCE | ) |
| COMPANY OF AMERICA; | ) |
| AND UNUMPROVIDENT | ) |
| CORPORATION | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.:

**4:06-CV- 150**
**-HLM**

**COMPLAINT**

COMES NOW Plaintiff, NANCY A. ADAMS, a resident of Floyd County,

Georgia, who suffers from Multiple Sclerosis as diagnosed by her treating physicians,

by and through her attorney, and files this Complaint alleging that Unum Life

Insurance Company ("Unum Life" or "UNUM") and UnumProvident Corporation

("UnumProvident" or "UNUM") (hereinafter collectively referred to as "Defendants")

wrongfully deprived Ms. Adams of her Long Term Disability ("LTD") insurance

benefits that were contractually bargained and exchanged for in the Unum Life

Insurance Company of America Disability Income Policy ("Policy" or "Policies") and

Life Insurance Waiver of Premium ("LWOP") that was contractually bargained and

exchanged for in the Unum Life Insurance Company of America Group Life and Accidental Death and Dismemberment Insurance Policy ("Policy" or "Policies"), plus interest and attorney's fees.

## A.    PARTIES

1.

Plaintiff, Nancy A. Adams, (hereinafter "Adams" or "Ms. Adams") is and was, at all relevant times, a citizen of the United States and a resident of the State of Georgia residing at 1060 Texas Valley Road, NW, Rome, Georgia 30165.

2.

Unum Life Insurance Company of America ("Unum Life" or "UNUM") is and was at all relevant times a foreign for profit corporation organized and existing under the laws of the state of Maine and an insurance company registered and authorized to transact business in the State of Georgia.  Unum Life may be served with process by and through its registered agent CT Corporation System, 1201 Peachtree Street NE, Atlanta, GA  30361.

3.

UNUMProvident Corporation ("UnumProvident" or "UNUM") is and was at all relevant times a foreign for profit corporation organized and existing under the laws of the state of Tennessee and registered and authorized to transact business in the State of

2

Georgia. UnumProvident may be served with process by and through its registered agent, CT Corporation System, 1201 Peachtree Street N.E., Atlanta, Georgia 30361.

a)    UnumProvident is a holding company and the parent corporation of Unum Life;

b)    UnumProvident is not a named party to the Policy and has no contractual authority to determine eligibility for benefits or interpret the terms and provisions of the Policy;

c)    UnumProvident is the alter-ego of Unum Life and acted as such in the handling of Plaintiff's claim for disability benefits and Life Insurance Waiver of Premium:

   i) There are interlocking officers and directors between UnumProvident and Unum Life and the officers and directors of UnumProvident and Unum Life are virtually identical;

   ii) UnumProvident provides the following services for Unum Life: sales, underwriting, administration, claims, financial services, human resources;

   iii) In filings with government agencies, UnumProvident has stated that it offers various insurance and income protection products even though it is designated as a holding company (a foreign profit corporation, not an insurance company) and claims it is not an insurer;

3

iv) Hundreds of millions of dollars pass between UnumProvident and its subsidiaries, including Unum Life;

v) UnumProvident substantially controls the operations of Unum Life;

vi) UnumProvident issues checks on behalf of Unum Life;

vii)    UnumProvident considers income of Unum Life as its own;

viii)    UnumProvident controls and dominates the finances and business practices of Unum Life;

d)    UnumProvident acts as the alter ego and/or joint venturer with Unum Life and administers claims in relation to policies insured by Unum Life and so acted in administering and handling the claim filed by Plaintiff:

i) UnumProvident created the claims handling procedures for three, merged insurance subsidiaries (Provident Life, Paul Revere, and Unum Life) and the unified claims operations are overseen by UnumProvident;

ii) Corporate changes subsequent to the issuance of the group insurance policy resulted in UnumProvident employees assuming the claims handling functions for Unum Life and other subsidiaries of UnumProvident;

iii) UnumProvident is the employer of all persons who were involved in the claim processing and denial of Adams' claim for LTD benefits;

4

iv) UnumProvident is the employer of all persons who were involved in the claim processing and denial of Adams' claim for Life Insurance Waiver of Premium;

v) Unum Life had no employees for claims handling functions at the time of the denial of Adams' benefits, and all decisions made in good or bad faith were made by UnumProvident;

vi) UnumProvident employees made all the claims decisions and acted in concert with their wholly owned subsidiary, and failed to consider all the evidence Adams submitted in support of her claims;

vii)     UnumProvident handled Adams' claims and made claims determinations on the denial of Adams' claims;

viii)    UnumProvident exercised discretion, responsibility and control over Adams' claims and acted in violation, committing per se violations, of the Unfair Claims Settlement Practices Act and other claims handling laws: O.C.G.A. §§ 33-6-30; 33-6-33; 33-6-34; and 33-29-3;

ix) UnumProvident exercised authority over Adams' claims even though there is no privity or contractual relationship between Adams and UnumProvident;

x) Correspondence concerning the denial of Plaintiff's disability benefits was sent to Plaintiff on UnumProvident letterhead from persons employed and

5

paid by UnumProvident not Unum Life;

xi) Correspondence concerning the denial of Plaintiff's Life Insurance Waiver of Premium claim was sent to Plaintiff on UnumProvident letterhead from persons employed and paid by UnumProvident not Unum Life;

xii)    UnumProvident was the entity that last reviewed and denied Adams' claims for LTD benefits and Life Insurance Waiver of Premium;

## B.    JURISDICTION & VENUE

4.

Plaintiff's claims relate to the Unum Life Insurance Company of America Group Long Term Disability Insurance Policy ("Policy" or "Policies") number 502147 002 and Unum Life Insurance Company of America Group Term Life and Accidental Death and Dismemberment Insurance Policy ("Policy" or "Policies") number 502147.

5.

Jurisdiction in this Court is proper.  Plaintiff is a resident of the State of Georgia. Defendants are registered and authorized to transact business in the State of Georgia. However, Defendants principal place of business is not Georgia.  Plaintiff's claims, which simultaneously and alternatively seek legal and equitable remedies, exceed $75,000.  Further, Plaintiff's claims are not preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. δ 1001, et seq.

6

6.

Venue in this Court is proper pursuant to diversity jurisdiction and 28 U.S.C. § 1332(a)(1).

7.

Venue is proper within the Northern District of Georgia because Defendants have conducted business in the Northern District of Georgia, Rome Division.

Ms. Adams exhausted all required pre-litigation remedies.

## C.    FACTUAL BACKGROUND

8.

At all times relevant to this action, Ms. Adams was an employee of State of Georgia (State Merit System and Departments) and was covered under the LTD Policy, Effective July 1, 2002 and Group Term Life and Accidental Death and Dismemberment Insurance Policy, Effective July 1, 1993.

9.

Ms. Adams filed claim forms for LTD benefits under the Employee Benefit Plan Council State of Georgia Group Policy number 502147 002 insured by UNUM Life Insurance Company of America, alleging disability as of July 1, 2003. In support of her claim Ms. Adams attached an Attending Physician Statement completed by Frank Hampton M.D., Ms. Adams' treating physician dated July 31, 2003 and an Attending

7

Physician Statement completed by William Stuart, M.D., Ms. Adams' treating neurologist dated October 29, 2003.

10.

Ms. Adams was born in December 1948, and the applicable Maximum Benefit Period for Adams' claim under the LTD Policy is age 65.

11.

With the support of her treating physician and treating neurologist, Ms. Adams applied for disability benefits and waiver of life insurance premium alleging disability based on the restrictions and limitations associated with Multiple Sclerosis and Major Depression that prevented her from performing the material and substantial duties of her regular occupation.

12.

Defendants denied Ms. Adams' LTD claim on March 30, 2004.

13.

Defendants denied Ms. Adams' LWOP claim on March 30, 2004.

14.

Defendants denied Ms. Adams' LTD claim and LWOP claim by letter dated March 30, 2004, on UNUMProvident letterhead signed by Meghan LoCascio, as Disability Benefits Specialist, UNUM Life Insurance Company of America.

8

15.

Defendants denied Ms. Adams' LTD claim on November 15, 2004.

16.

Defendants denied Ms. Adams' LWOP claim on November 15, 2004.

17.

Defendants denied Ms. Adams' LTD claim and LWOP claim by letter dated

November 15, 2004, on UNUMProvident letterhead signed by Deborah Cole, as Lead

Appeals Specialist, UNUM Life Insurance Company of America.

18.

Ms. Adams timely appealed the denial of her LTD claim and Life Insurance

Waiver of Premium claim and exhausted all administrative remedies.

19.

## Terms of the LTD Policy

Under the LTD Policy:

### Definition of Disability

You are disabled when UNUM determines that due to sickness,
pregnancy, or injury:

1. you are receiving regular care from a doctor on a continuing basis; and
2. you are limited from performing the material and substantial duties of
   your regular occupation, in your local economy; and

9

3. you have a 20% or more loss in your indexed monthly earnings due to the same sickness, pregnancy, or injury.

You will continue to receive payments beyond 24 months if you are also:

1. working in any occupation and continue to have a 40% or more loss in your indexed monthly earnings due to your sickness, pregnancy, or injury; or
2. not working and, due to same sickness, pregnancy, or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.

Under the LTD Policy:

**"Regular Occupation"** means the occupation you are routinely performing when your disability begins.

Under the LTD Policy:

**"Material and Substantial Duties"** means duties that:

1. are normally required for the performance of your regular occupation; and
2. cannot be reasonably omitted or modified.

Under the LTD Policy:

**Elimination Period:**

180 days
Benefits begin the day after the elimination period is completed.

20.

Ms. Adams was and is disabled within the definition of disability in the LTD Policy and is entitled to benefits.

10

21.

## Terms of the Group Term Life Insurance Policy

Under the Group Term Life Policy:

"Totally Disabled" means that you are not able to engage in any business or job for which the employee is suited by education, training, or experience. The disability must:

(a) be caused by injury or sickness; and
(b) begin the while employee is covered for the life insurance provided by the group policy.

You will not be deemed to be totally disabled while you are engaged in a business or job for pay or profit.

22.

Ms. Adams was and is disabled within the definition of disability in the Group

Term Life and Accidental Death and Dismemberment Insurance Policy.

23.

## Occupation, Sickness & Benefits Application

Prior to June 2003, Ms. Adams' regular occupation was with State of Georgia

(State Merit System and Departments) Coosa Valley Technical College as a Business

and Office Technical Instructor.

24.

Ms. Adams' education, training and experience is related to being a Business and Office Technology Instructor. The occupation physically requires extensive sitting, standing, walking, speaking, and fine finger dexterity. The occupation mentally requires cognitive functional ability, mental acuity, frequent interpersonal relationships, and ability to deal with frequent stressful situations.

25.

While working in her regular occupation, Ms. Adams' indexed monthly earnings totaled $6,802.00 per month.

26.

On or around 1998, symptoms of Ms. Adams' disabling condition, Multiple Sclerosis first appeared. On or around June 2003 and at age 54, Ms. Adams could no longer perform the material and substantial duties of her regular occupation and ceased working due to Multiple Sclerosis and other related physical impairments which now contribute to her ongoing disabling condition.

27.

Along with her application, Ms. Adams submitted an Attending Physician's Statement from Frank Hampton, MD, who diagnosed Ms. Adams with Multiple Sclerosis and noted the following restrictions: "MS is impairing patient's motor and

12

cognitive skills. It is variable, but progressive." Dr. Hampton also noted the following

limitations: "Loss of Voice, Loss of Visual Acuity and Generalized Motor Debilitation.

Patient has impaired loss of function."

28.

Dr. Hampton's Attending Physician Statement dated July 31, 2003 also stated

Ms. Adams suffers from the following functional limitations:

a)    Adams ability to sit: <u>0</u> hours in an 8 hour work day;

b)    Adams ability to stand: <u>0</u> hours in an 8 hour work day;

c)    Adams ability to walk: <u>0</u> hours in an 8 hour work day;

d)    Adams cannot climb;

e)    Adams cannot twist/bend/stoop;

f)    Adams cannot reach above shoulder level;

g)    Adams cannot operate a motor vehicle;

i)    Adams is limited to occasional lifting and carrying up to 10 lbs;

j)    Adams can never lift/carry 10 lbs or more;

k)    Adams cannot perform repetitive fine finger movements, eye/hand
      movements, and pushing/pulling;

l)    Adams has "*Marked*" damage and disease from Multiple Sclerosis

m)    Adams is unable to work; and

13

n)     Adams is unlikely to improve and is *"never"* expected to have fundamental changes in her condition.

### 29.

Along with her application, Ms. Adams submitted an Attending Physician's Statement from William H. Stuart, MD, Treating Neurologist, who diagnosed Ms. Adams with Multiple Sclerosis and noted objective findings, including MRI and Clinical Exam. Dr. Stuart, documented the following symptoms:

a)     Gait Dysfunction;

b)     Decreased Balance;

c)     Decreased Sensory;

d)     Decreased Cognition; and

e)     Decreased Vision;

### 30.

Dr. Stuart's Attending Physician Statement dated October 29, 2003 also stated Ms. Adams suffers from the following Restrictions and Limitations: "Patient has severe neurological disease process. Her MS is not stable. All ADL's are affected to varying levels and upon increased physical exertion and stress."

14

31.

Along with her application, Ms. Adams submitted a State of Georgia Flexible

Benefits Program Disability Claim Agency Statement dated August 5, 2003, from Dr.

David Cox, Director of Instruction, of the State of Georgia, Georgia Merit System ,

who upon request by UNUMProvident made the following occupational analysis and

assessment of job activities:

    a)    Sitting 3-4 hour per work day;

    b)    standing 3-4 hours per work day;

    c)    walking 1-2 hours per work day;

    d)    fine finger dexterity (both hands) 5-6 hours per work day;

    e)    lifting or carrying 10 lbs or less occasionally (1-33% of time);

    f)    continuous (more than 66% of time) interpersonal relationships; and

    g)    continuous (more than 66% of time) stressful situations.

32.

Ms. Adams' entitlement to LTD benefits is supported by her treating and

examining physicians, the objective medical evidence, the vocational information, and

the claim file.

33.

Ms. Adams' entitlement to LWOP is supported by her treating and examining

15

physicians, the objective medical evidence, the vocational information, and the claim file.

34.

At all times relevant to this claim, Ms. Adams' sickness limits her from being able to perform the material and substantial duties of her regular occupation, in her local economy.

35.

At all times relevant to this claim, Ms. Adams is receiving regular care from a doctor on a continuing basis.

36.

At all times relevant to this claim, Ms. Adams has had a 20% or more loss in her indexed monthly earnings due to same sickness.

37.

At all times since the 24 month change in definition under the LTD Policy, Ms. Adams' sickness has prevented her from being able to perform the duties of any gainful occupation for which she is reasonably fitted by education, training, or experience.

38.

At all relevant times Ms. Adams has meant all the conditions of the definition of

16

disability under the Policy.

39.

Ms. Adams requested a review of her LTD and LWOP claims numerous times

prior to litigation including: May 10, 2004, September 24, 2004, and April 7, 2006.

40.

Ms. Adams April 7, 2006 appeal letter also sets forth a detailed, lengthy request

for documents including a copy of all relevant documents, records and information

concerning her claim.

41.

By letter dated April 19, 2006, UNUM acknowledged receipt of Ms. Adams'

letter dated April 7, 2006 and stated "it is our position that the appeal decision as

outlined in our November 15, 2004, letter is appropriate and shall stand."

### D. GROUNDS FOR RELIEF

42.

**Count I**

**Breach of Contract - OCGA § 9-2-20**

**UNUM's Wrongful Denial of Adams' Benefits Claim**

The allegations of all preceding paragraphs are incorporated herein by reference

17

as if set forth in full.

43.

Ms. Adams has fulfilled all conditions precedent under the Policy to entitle her

to monthly benefits commencing on or about December 27, 2003, 180 days after the

Elimination Period.  The Policy declares that UNUM will pay the Monthly Benefit

Amount, up to the Maximum Disability Benefit, for every month that Ms. Adams

satisfies the Policy's Disability Benefits provisions.  Since June 30, 2003, Ms. Adams'

sickness, Multiple Sclerosis, with the following associated impairments: Weakness,

Functional Limitations, Loss of Voice, Loss of Visual Acuity, Generalized Motor

Debilitation, Gait Dysfunction, Cognitive Impairments; and secondary Major

Depression condition, met, and continues to meet, the Policy's definition of disability,

satisfying the Policy's LTD Benefits provisions and Life Insurance Waiver of Premium

provisions.

44.

Ms. Adams has fulfilled all conditions precedent under the Policy to entitle her

to waiver of Life Insurance Premium. The Policy declares that "If you become totally

disabled, you are eligible for your Continued Death Benefit without premium payment.

In order to meet the requirements of this provision you must submit proof of your total

disability and have it approved by UNUM. Your first proof must be filed between the

18

9th month and 12th month of total disability." Ms. Adams has filed proof of total disability and satisfies the Policy's Disability Benefits provisions. Since June 30, 2003, Ms. Adams' sickness, Multiple Sclerosis, with the following associated impairments: Weakness, Functional Limitations, Loss of Voice, Loss of Visual Acuity, Generalized Motor Debilitation, Gait Dysfunction, Cognitive Impairments; and secondary Major Depression condition, met, and continues to meet, the Policy's definition of disability, satisfying the Policy's Life Insurance Waiver of Premium provisions.

45.

Ms. Adams timely submitted her claim for LTD benefits and Life Insurance Waiver of Premium.

46.

UNUM's wrongfully denied Adams' LTD claim and LWOP claim.

47.

Ms. Adams timely appealed UNUM's wrongful denial and submitted additional information to UNUM – Proof of Loss – which supported her LTD claim and LWOP claim.

19

48.

UNUM's denial of Ms. Adams' LTD claim and the failure to approve and pay LTD benefits to Ms. Adams is wrong, inconsistent with the evidence of record, without any reasonable basis, arbitrary and capricious, and made in bad faith.

49.

UNUM's denial of Ms. Adams' LWOP claim and the failure to approve waiver of life insurance premium is wrong, inconsistent with the evidence of record, without any reasonable basis, arbitrary and capricious, and made in bad faith.

50.

In response to Ms. Adams' appeal, on or about April 19, 2006, UNUM informed Ms. Adams that the appeal decision outlined in their November 15, 2004, letter is appropriate and shall stand. UNUM issued its Final Denial of Adams's claim, which exhausted Adams's pre-litigation remedies.

**Adams' May 10, 2004 Request for Review**

51.

Prior to resorting to litigation, by letter dated May 10, 2004, Ms. Adams acting on her own behalf, requested a review of the March 30, 2004 denial.

### Adams' September 24, 2004 Request for Review

52.

Prior to resorting to litigation, by letter dated September 24, 2004, Ms. Adams, through her former attorney, requested a review of the March 30, 2004 denial.

### Adams' April 7, 2006 Renewed Request for Review

53.

Prior to resorting to litigation, by letter dated April 7, 2006, Ms. Adams, through her attorney, requested a review of the March 30, 2004 and November 15, 2004 denials.

### Adams' April 7, 2006 Bad Faith Demand

54.

Prior to resorting to litigation, by letter dated April 7, 2006, Ms. Adams, through her attorney, demanded pursuant to O.C.G.A. § 33-4-6, that within 60 days of receiving notice, UNUM immediately pay past due LTD benefits (plus interest) owed to Ms. Adams under the LTD Policy, and that UNUM immediately reinstate Ms. Adams to the monthly LTD benefits owed to Ms. Adams under the Policy. A copy of the cover letter to UNUM is attached as Exhibit "A" and made part hereof.

21

55.

UNUM failed to respond within 60 days to Ms. Adams' demand pursuant to

O.C.G.A. § 33-4-6. By failing to respond to Ms. Adam's demand, and by failing to

evaluate the information submitted by Ms. Adams in good faith, and pay benefits under

the Policy, UNUM has breached its contract with Ms. Adams.

56.

More than 60 days have passed since Ms. Adams' written demand upon UNUM

to reverse its decision that she is not entitled to LTD benefits under the Policy.

57.

More than 60 days have passed since Ms. Adams' written demand upon UNUM

to reverse its decision that she is not entitled to Life Insurance Waiver of Premium

under the Policy.

58.

The evidence enumerated in the previous paragraphs was available to

Defendants at the time of their final denial letter on April 19, 2006. In addition to the

evidence present in the claim file including:

(a)     medical records from Multiple Sclerosis Center of Atlanta;

(b)     medical records from Peachtree Neurological Clinic;

(c )    medical records from Frank Hampton, MD;

22

(d)     medical records from William H. Stuart, MD;

(e)     medical records from Anthony C. Allee, MD at Shorter Behavioral Health, Shepherd Center, Inc.;

(f)     State of Georgia and The Georgia Merit System Job Description for Technical Instructor;

(g)     Dr. Frank Hampton's Attending Physician Statement dated July 31, 2003;

(h)     Dr. William H. Stuart's Attending Physician Statement dated October 29, 2003; and

(i)     Dr. David Cox's Agency Statement dated August 5, 2003.

59.

The letter of March 30, 2004, wrongly denied Ms. Adams' LTD claim and LWOP claim.

60.

UNUM's letter dated March 30, 2004 stated "Based on our complete review of the available medical and vocational information, there is no evidence of the presence of any condition severe enough to cause a level of impairment that we would expect to limit you from performing the material and substantial duties of your regular occupation as a technical instructor."  Such statements were merely self serving assertions made in order to continue to deny Ms. Adam's LTD claim and LWOP claim

23

and were made in bad faith.

61.

The letter of November 15, 2004, wrongly denied Ms. Adams' LTD claim and

LWOP claim and was made in bad faith.

62.

UNUM's letter dated November 15, 2004 stated "We have determined that the

medical information in the file does not support a condition that would preclude Ms.

Adams from doing the material and substantial duties of her occupation. Therefore, we

must uphold our previous denial decision." Such statements were merely self serving

assertions made in order to continue to deny Ms. Adam's LTD claim and LWOP and

were made in bad faith.

63.

UNUM's denial of LTD benefits and claim for LWOP was wrong, intentional,

self-serving, arbitrary, capricious, without substantial evidentiary support, and made in

bad faith.

64.

Under the terms of the LTD Policy, UNUM agreed to provide Ms. Adams with

benefits if she met the requirements therein. To date Ms. Adams has not been paid the

benefits due to her under the LTD Plan. Ms. Adams has satisfied all conditions for

24

eligibility for receipt of benefits under the LTD Plan and has not waived or otherwise relinquished her entitlement to benefits.

65.

Under the terms of the LWOP Policy, Unum agreed to provide Ms. Adams with waiver of life insurance premium if she met the requirements therein. To date Ms. Adams has not been paid approved for waiver of life insurance premium due to her under the LTD Plan. Ms. Adams has satisfied all conditions for eligibility for receipt of waiver under the LWOP Plan and has not waived or otherwise relinquished her entitlement to life insurance premium waiver.

66.

## Count II

### Bad Faith Breach of Contract

The allegations of all preceding paragraphs are incorporated herein by reference as if set forth in full.

67.

Defendants are insurers within the meaning of O.C.G.A. § 33-4-6.

68.

In denying Ms. Adams' claims, both UNUM and UNUM Life failed to objectively and fairly evaluate the claim, asserted reasons for denying the claims that

25

are without reasonable bases in fact, conducted an unreasonable investigation of the claims, and unreasonably withheld benefits.

69.

Unum Life's failure and refusal to reverse its determination in its March 30, 2004 denial letter and its November 15, 2004 denial letter, that Ms. Adams is not entitled to LTD benefits under the Policy constitutes a refusal to pay policy benefits in bad faith, in the Unum Life has no reasonable grounds or no good probable cause upon which to deny Ms. Adams claim for benefits, and/or its denial of liable is frivolous and unfounded.

70.

Unum Life's failure and refusal to reverse its determination in its March 30, 2004 denial letter and its November 15, 2004 denial letter, that Ms. Adams is not entitled to Life Insurance Waiver of Premium under the Policy constitutes a refusal to pay policy benefits in bad faith, in the Unum Life has no reasonable grounds or no good probable cause upon which to deny Ms. Adams claim for benefits, and/or its denial of liable is frivolous and unfounded.

71.

UNUM conducted, and conspired and cooperated with Unum Life to conduct, a bad faith investigation of Ms. Adams claims, with the intent that Ms. Adams' claims be

26

denied upon no reasonable grounds, and for no good or probable cause, and upon frivolous and unfounded bases.

72.

UNUM directed Unum Life to deny Ms. Adams' claims with knowledge that the denial was based upon no reasonable grounds, and for no good or probable cause, and upon frivolous and unfounded bases.

73.

Unum Life's bad faith in refusing to further pay Ms. Adams benefits, and UNUM's bad faith in conducting an investigation, and conspiring and cooperating with Unum Life and directing it to deny Ms. Adams' benefits, is further evidenced by the corporate patterns, practices and conduct set forth above, all of which played a material role in Defendants' actions with respect to Ms. Adams.

74.

Defendants are further guilty of bad faith by intentionally ignoring or intentionally misconstruing the overwhelming evidence of Ms. Adams' total disability in their investigative files.

75.

Defendants are further guilty of bad faith by repeatedly making material misstatements and misrepresentations of fact in their dealing with Ms. Adams.

27

76.

Unum Life's refusal to pay policy benefits in bad faith, and UNUM's conspiracy in support thereof and direction to Unum Life to do so, despite the clear evidence in their possession that Ms. Adams was at all relevant times totally disabled under the terms of the Policies has, upon information and belief, been undertaken as part of Defendants' effort to reduce losses arising out of these  disability policies and life insurance waiver of premiums, reflects the intent of Defendants to place their own interest ahead of those of their insureds, and a pattern and practice of the wrongful denial of claims related to Multiple Sclerosis, all of which further constitute bad faith.

77.

More than 60 days have passed since Ms. Adams made a written demand upon Defendants to reverse their decision that she is not entitled to benefits under the Policies.

78.

Unum Life assigned the responsibility for conducting investigations into Ms. Adams' LTD benefits claim and determinations on Ms. Adams's LTD benefits claim to UnumProvident, which thereupon became Unum Life's agent for that purpose.

28

79.

As such, Ms. Adams and UnumProvident entered into a contractual relationship concerning the investigation and determination of Plaintiff's claim for LTD benefits, pursuant to which UnumProvident implicitly covenanted to conduct all such investigations in good faith and fair dealing.

80.

Unum Life assigned the responsibility for conducting investigations into Ms. Adams' LWOP claim and determinations on Ms. Adams's LWOP claim to UnumProvident, which thereupon became Unum Life's agent for that purpose.

81.

As such, Ms. Adams and UnumProvident entered into a contractual relationship concerning the investigation and determination of Plaintiff's claim for LTD benefits, pursuant to which UnumProvident implicitly covenanted to conduct all such investigations in good faith and fair dealing.

82.

UnumProvident conducted its investigations with respect to Plaintiff's LTD claim and LWOP claim in bad faith, and/or has been stubbornly litigious, and/or has caused Plaintiff unnecessary trouble and expense.

29

83.

Unum Life is responsible for the acts of its agent as aforesaid.

84.

By virtue of this breach of the duty of good faith and fair dealing, and the bad faith conduct as aforesaid by Unum Life and UnumProvident, Plaintiff has sustained damages in the form of lost disability benefits and consequential damages resulting therefrom, and has been required to incur expenses of litigation, including but not limited to attorneys' fees and costs which he is entitled to recover under the provisions of OCGA § 33-4-6.

85.

By virtue of this breach of the duty of good faith and fair dealing, and the bad faith conduct as aforesaid by Unum Life and UnumProvident, Plaintiff has sustained damages in the form of lost life insurance waiver of premium, and consequential damages resulting therefrom, and has been required to incur expenses of litigation, including but not limited to attorneys' fees and costs which he is entitled to recover under the provisions of OCGA § 33-4-6.

30

86.

## Count III

### UnumProvident engaged in a Joint Venture with

### Unum Life and UnumProvident is the Alter Ego of Unum Life.

The allegations of all preceding paragraphs are incorporated herein by reference as set forth in full.

87.

UnumProvident engaged in a joint venture with Unum Life by acting as one in the same entity when denying Plaintiff's LTD claim.

88.

UnumProvident is the alter ego of Unum Life, both of which wrongfully denied Plaintiff's LTD claim.

89.

UnumProvident engaged in a joint venture with Unum Life by acting as one in the same entity when denying Plaintiff's LWOP claim.

90.

UnumProvident is the alter ego of Unum Life, both of which wrongfully denied Plaintiff's LWOP claim.

91.

Because UnumProvident and Unum Life are one in the same, either as a joint venture or alter ego corporations, it would be an injustice allowing subterfuge not to hold UnumProvident accountable for its wrongful actions.

92.

## Count IV

## Attorney Fees & Expenses of Litigation – OCGA §§ 33-4-6, 9-15-14, 13-6-11

The allegations of all preceding paragraphs are incorporated herein by reference as set forth in full.

93.

Defendants' position in denying Ms. Adams' LTD benefits claim exhibits a lack of substantial justification, was interposed for delay, and unnecessarily expanded the proceedings by improper conduct and bad faith.

94.

Defendants' position in denying Ms. Adams' LWOP claim exhibits a lack of substantial justification, was interposed for delay, and unnecessarily expanded the proceedings by improper conduct and bad faith.

32

95.

More than 60 days have passed since Ms. Adams made a written demand upon Defendants to reverse their decision that she is not entitled to LTD benefits and Life Insurance Waiver of Premium.

96.

In accordance with O.C.G.A. § 33-4-6, UNUM is liable to Ms. Adams for a bad faith penalty of fifty percent (50%) and reasonable attorney's fees.

97.

In accordance with O.C.G.A. § 33-4-6, Unum Life is liable to Ms. Adams for a bad faith penalty of fifty percent (50%) and reasonable attorney's fees.

**E.    PRAYER FOR RELIEF**

98.

**WHEREFORE,** Adams requests the following relief:

a)    Judgment in favor of Plaintiff, Nancy A. Adams;

b)    That Unum Life be ordered to pay to Ms. Adams the full amount of LTD benefits due and unpaid under the Policy as of the date of judgment, plus interest at the Georgia statutory rate;

c)    That Unum Life be ordered to refund to Ms. Adams all premiums paid by her during the period of her disability;

33

d)    That Unum Life be found to hold Ms. Adams' unpaid monthly LTD benefits and premium payments as trustee for Ms. Adams, and accordingly be ordered to account to Ms. Adams for and be ordered to pay over to Ms. Adams all monies earned on the withheld LTD benefits and premium payments;

e)    That Unum Life be ordered to pay to Ms. Adams the present value of LTD benefits actuarially determined to be due to her for the remainder of her life;

f)    That Unum Life be ordered to effectuate retroactively Ms. Adams LWOP claim under the Policy;

g)    That the Court find that UnumProvident and Unum Life acted as alter egos and/or in a joint venture in wrongfully denying Plaintiff's LTD claim, and that the Court implement equitable remedies for UNUM's wrongful denial of Plaintiff's LTD claim;

h)    That the court enter judgment against Unum Life and UnumProvident for reasonable attorneys fees and costs in accordance with O.C.G.A. § 33-4-6; and a penalty of fifty percent (50%) on the amount of unpaid past and future benefits;

i)    That the Court find that UnumProvident and Unum Life acted as alter egos and/or in a joint venture in wrongfully denying Plaintiff's LWOP claim, and that the Court implement equitable remedies for UNUM's wrongful denial of Plaintiff's LWOP claim; and

34

j)    That the Court enter judgment against Unum Life and UnumProvident for all

damages proximately caused by its wrongful conduct together with interest and

the expenses of litigation in accordance with OCGA §§ 33-4-6, 9-15-14, and 13-

6-11.

## F.    JURY TRIAL DEMAND

99.

Plaintiff demands a trial by jury on all counts of this Complaint to which she

has a right to trial by jury.

Respectfully submitted this  29th  day of June, 2006.

Pamela I. Atkins
Georgia Bar No. 026302
Attorney for Plaintiff Nancy A. Adams

Atkins & ASSOCIATES, LLC
Attorneys-at-Law
1117 Perimeter Center West, Suite W405
Atlanta, GA  30338
Phone (770) 399-9999
Fax (770) 399-9939